J-S74002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Y.R.L.P., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.J.P., FATHER | : : : : : : : | No. 2449 EDA 2019 |

Appeal from the Decree Entered July 17, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2019-A0066

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED MARCH 06, 2020**

B.J.P. (Father) appeals from the decree entered July 17, 2019, and dated July 16, 2019, that granted the petition filed by the Montgomery County Office of Children and Youth (OCY or Agency) seeking the involuntary termination of Father's parental rights to Y.R.L.P. (Child), born in September of 2015.  We affirm.

On April 25, 2019, the Agency filed its petition for termination of Father's parental rights and alleged grounds under 23 Pa.C.S. § 2511(a)(1), (2), (8) and (b).  The trial court provided a review of the factual and procedural history of this case and its reasoning for terminating Father's parental rights by attaching the notes of testimony from the July 16, 2019 hearing to its

_____

[*] Former Justice specially assigned to the Superior Court.

Pa.R.A.P. 1925(a) opinion.[1]  Specifically, the court determined that the Agency had not proven the applicability of subsections (a)(1) and (8).  Rather, it found that the Agency had proven that termination of Father's parental rights should be terminated pursuant to sections (a)(2) and (b).  With regard to subsection (a)(2), the trial court explained:

> In this case, as Mr. Quigg[, Father's attorney,] has argued, with respect to the birth [F]ather, the six-month period preceding the filing of the petition on April 25th began on October 25th, 2018.  I do not conclude that the Office of Children and Youth has established a ground for termination under Section 2511(a)(1), because during that six-month period prior to the filing of the petition, birth [F]ather in the end of 2018, from October 25th, 2018, and before that, until December 4th or 5th of 2018, [F]ather was not only in compliance but making strides towards reunification and indeed had unsupervised visits with the [C]hild and four overnight visits with the [C]hild between October/November of 2018 through December 4th, I think, of 2018.
>
> So for that early part of the six-month period preceding the filing of the petition, birth [F]ather was making efforts to reunify with the [C]hild and meeting the goals that OCY set for him.
>
> I will also agree with Mr. Quigg with respect to the birth [F]ather that under Section 2511(a)(8), the conditions that led to the removal of the [C]hild primarily focused on the abuse that the [C]hild suffered in September of 2017, and those conditions, specifically the abuse and the fact that he was residing at the time

---

[1] At the same hearing, L.E.F.'s (Mother) parental rights to Child were also terminated.  Mother filed a separate appeal with this Court, which is addressed in a separate memorandum at No. 2193 EDA 2019.

with Mr. Darby[2] and at times under his supervision, no longer exist.

So with respect to the birth [F]ather, … the [c]ourt concludes that Section 2511(a)(8) is not an established ground for termination of parental rights.

However, I do conclude that the Office of Children and Youth has provided clear and convincing evidence for termination of the birth [F]ather's parental rights under Section (a)(2) of the statute in that the birth [F]ather, since December of 2018, has refused to parent the [C]hild and has simply removed himself from the [C]hild's life.

The testimony indicated that since December of 2018, when the Office of Children and Youth determined to withdraw the motion for redisposition and no longer sought to permit the [C]hild to be reunified with … the birth [F]ather -- from that time until the present, the birth [F]ather had requested only one visit with the [C]hild on June 27th of 2018 -- that was after the filing of the petition, obviously just in the last couple of weeks -- and has missed the opportunity to visit with his [C]hild, provide for his [C]hild, parent his [C]hild, provide for him financially, emotionally, or in any other way for a lengthy period now in excess of six months.

The [c]ourt is mystified as to why [Father] took this course of action. He hasn't maintained communication with the Office of Children and Youth during this period. He hasn't maintained communication with his attorney during this period. He's failed to appear for court proceedings, including today's court proceeding, to take the opportunity to explain to the [c]ourt and to the Office of Children and Youth how he intends to parent, how he would like to go forward, or to provide any explanation at all of his behavior for the last six months or his intentions with respect to the [C]hild.

---

[2] The actions of Mr. Darby, who was Mother's boyfriend, caused the severe injuries to the Child and prompted the Agency to get involved with the family. Mr. Darby, who was caring for the Child at the time of the Child's injuries, violently assaulted the Child and caused the injuries that included Stage V lacerations to the Child's kidney and his spleen and fractures to the Child's clavicle and ribs. The Child remained in the hospital for over a month.

The failure to consistently visit and maintain that consistency on his part has caused a rupture to the bond between the [C]hild and the birth [F]ather, and he has taken no steps since December except for one visit, I will say. Other than the one recent visit, he hasn't taken steps to repair that bond and to build upon that bond. He discontinued contact with OCY and neither scheduled nor attended any visits with …, his son, in the last seven months except for the one visit he scheduled with the foster mother on June 27th, 2019. At least that's my recollection of the testimony.

In addition to the inconsistency and failure to parent for the last six months, looking back at the testimony taken as a whole, there were issues with his behavior that evidenced some inconsistency, such as his frequent refusal to provide drug screens to OCY and his sometimes positive drug screen when provided to OCY, albeit for marijuana.

I think that summarizes the inconsistencies.

But just to reiterate, he repeatedly refused to provide drug screens to OCY. He missed many opportunities to visit with his [C]hild, particularly during the past seven months, except for one recent. He failed to communicate with his OCY worker. He failed to communicate with his attorney, and he failed to appear in court today to advocate in his own interest or to advocate for his son's interest.

For all of those reasons, the [c]ourt concludes that the Office of Children and Youth has established a refusal to parent under Section 2511(a)(2) by [Father,] which will not be remedied and has not been remedied and established a ground for termination of parental rights.

N.T., 7/16/19, at 199-203.

The trial court then explained the facts and its reasoning relating to section 2511(b), stating:

In this case, the testimony clearly established that the birth [F]ather has, through his own decisions, not maintained contact with or sought opportunities to maintain a parental relationship with the [C]hild with the exception of the one visit that he

requested that occurred in June, and therefore the parental bond between this [C]hild and the birth [Father] has been radically diminished through his own actions and inconsisten[cy] in attendance with respect to the [C]hild.

. . .

The testimony … both of the caseworker Ms. Plakis and of Ms. Martin indicated that [the Child] is happy, thriving, and bonded in the foster home, that he is loved by the foster parents and by the foster siblings, that he turns to the foster parents to meet his needs, to provide for him for comfort, to provide for him when he's hungry and when he's tired, that all of his needs are met by the foster parents, and that there is a strong, reliable, and stable parental bond with both of the foster parents and this [C]hild as well as a healthy relationship with the foster siblings.

Therefore, from all of the evidence and testimony that I considered this day, I find that termination of the birth [F]ather's parental rights … will best serve the needs and welfare of the [C]hild, and termination of … the birth [F]ather's parental rights will not irreparably harm the [C]hild.

*Id.* at 211, 212-13.

On appeal, Father raises the following issues for our review:

1. Did the trial court err in finding clear and convincing evidence that birth Father's continued incapacity, abuse, neglect, or refusal caused the Child to be without essential parental care, control, o[r] subsistence necessary for Child's physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent?

2. Did the trial court err in finding that the Child's developmental, physical, and emotional needs and welfare were best served through the permanent and irrevocable termination of birth Father's parental rights?

Father's brief at 4.

We review an order terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the trial court terminated Father's parental rights pursuant to sections 2511(a)(2) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

The thrust of Father's argument in his brief relative to subsection (a)(2) is that he met or made progress in reaching the goals set forth by the Agency. Specifically, Father lists the requirements that he completed, namely, parenting classes, a mental health evaluation, which required no follow up treatment, and maintaining employment and stable housing. Father acknowledges that his compliance with the required drug screens was "spotty," but points out that that fact did not override the Agency's December 2018 filing of a redisposition motion that would have returned the Child to his custody.

With regard to subsection (b), Father's brief provides a discussion about his bond with the Child, indicating that testimony established that there was a strong, loving bond between the two. Father further asserts that despite the period from December of 2018 to June of 2019, when he did not see the Child, the bond was still intact because "the [C]hild immediately recognized Father" despite the six month period of no contact. Father's brief at 11. Father further argues that the Agency's failure to request a bonding assessment is a tacit admission that a bond exists which is beneficial to the Child. Lastly, Father asserts that the court did not adequately address the impact on the Child that severing the bond would cause.

Having reviewed the record, we conclude that it supports the findings of the trial court that Father has not provided the Child with the essential parental care, control and subsistence necessary for his mental and physical well-being, and that Father is unable or unwilling to remedy the causes of his parental incapacity, neglect or refusal. While the trial court noted that Father was not the cause of the Agency's initial interaction with the family and that he had accomplished many of the goals set forth by the Agency prior to December of 2018, it is clear that at this point Father will not, or cannot, become a capable parent for the Child in light of his inaction since the end of 2018. He stopped contacting the Agency and did not avail himself of the 26 offered visits with the Child except for one visit in June of 2019. Father never explained why he no longer visited or called the Child, nor has he explained

why he failed to attend the termination hearing. Rather, Father's attorney informed the trial court of his inability to make contact with Father. Additionally, one of the Agency's caseworkers testified that termination would not be detrimental to the Child in that he is bonded with the foster parents and considers them to be his mother and father. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (indicating that subsection 2511(b) does not require a formal bond, that expert testimony is not required, and that a social worker or caseworker can evaluate whether a bond exists with a biological parent and/or with a foster parent).

Accordingly, we conclude that the trial court's findings and conclusions are supported by the evidence presented. Thus, we determine that the Agency has carried its burden of proof required under sections 2511(a)(2) and (b), and for that reason, we affirm the trial court's decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/20

- 11 -